**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COLEMAN ENTERPRISES CO., <br><br> Plaintiff, <br><br> v. <br><br> SCOTTSDALE INSURANCE COMPANY, <br><br> Defendant. | 1:14-cv-07533-NLH-AMD <br><br><br> **OPINION** |

**APPEARANCES**:

WILLIAM F. MERLIN, JR.
ASHLEY N. HARRIS
MERLIN LAW GROUP PA
777 S. HARBOUR ISLAND BOULEVARD
SUITE 950
TAMPA, FL 33602
    On behalf of plaintiff

JONATHAN MARK KULLER
CHRISTIAN ANDREW CAVALLO
CHRISTOPHER RYAN WEISS
DAVIS J. KIM
GOLDBERG SEGALLA LLP
902 CARNEGIE CENTER
SUITE 100
PRINCETON, NJ 08540-6530
    On behalf of defendant

**HILLMAN**, District Judge

    This case concerns a dispute over insurance coverage for a property that sustained wind damage in Superstorm Sandy. Currently pending are two summary judgment motions filed by Defendant, Scottsdale Insurance Company. Defendant's first motion argues that it is entitled to summary judgment in its favor because a binding settlement agreement precludes the attempt by

Plaintiff, Coleman Enterprises, Co., to seek additional insurance proceeds.  Defendant's second motion contends that judgment must be entered in its favor because Plaintiff has not properly provided an expert to support its burden of proving causation.  Plaintiff has opposed both motions, arguing that there was no binding settlement, and that it can properly prove causation.  For the reasons expressed below, both of Defendant's motions will be denied.

## BACKGROUND

The background facts of this case are relatively simple and undisputed.  Plaintiff is a private business that was operated and partially owned by Peter McKeown.  In October 2012, Plaintiff owned a two-story building in Sea Bright, New Jersey that consisted of four commercial units on the first floor and six apartments on the second floor.  Scottsdale issued a $1 million commercial package policy to Plaintiff for the period December 14, 2011 to December 14, 2012.  The Policy covered damage to the Building caused by wind, but did not cover damage to the structure caused by flooding.  On October 29, 2012, the building sustained wind and flood damage during Superstorm Sandy, and Plaintiff submitted a claim to Scottsdale for wind damage.[1]

Scottsdale retained Nelson Architectural Engineers, Inc. to

---

[1] Plaintiff was insured by a different insurer for flood damage. Plaintiff was paid the full $600,000.00 policy limits for the damage its building sustained by flood water.

2

evaluate the building and determine if any distress was caused by Sandy. On December 13, 2012, Robin Kemper, a licensed professional engineer employed by Nelson, inspected the building. Kemper prepared a report dated January 4, 2013, which estimated the cost to repair the wind damage to be $314,222.49.

On January 22, 2013, Plaintiff retained United American Contractors to work with its insurers and address the storm damage to the building. United prepared an estimate, finding the cost to repair the wind damage to be $585,156.24.

During the next few months, United and Scottsdale exchanged estimates and discussed the appropriate costs to repair the portions of the building that sustained wind damage. George Lester handled the negotiations on behalf of United and Scott Rothman participated in the negotiations on behalf of Scottsdale. On March 24, 2013, Rothman submitted a revised repair estimate of $469,714.65 to Lester, which included certain items and expenses that Lester requested, but that were not included within the prior repair estimate obtained by Scottsdale. Rothman's email stated, "Attached is revision for discussion purposes." (Docket No. 75-30 at 10.)

On March 25, 2013, Lester replied:

> I looked through the estimate. You added the items. We will work off your estimate. If we have any code upgrades required by the city, may we supplement those items if incurred? What should I tell Mr. McKeown the time frame will be for the payment? I am going to proceed with the repairs. Thank you for your help in the matter.

3

(Docket No. 75-30 at 12.)

On March 26, 2013, Rothman sent an email response to Lester, stating, "I have requested authority to issue payment and should do so w/in a week or so."  (Docket No. 75-30 at 14.)  Rothman informed Lester that he would discuss policy limitations on mold remediation and any code issues directly with the insured.  He also asked Lester for an estimate of completion.

On April 9, 2013, Rothman sent McKeown a letter, which provided in relevant part:

> As you are aware, an agreement was reached on the replacement cost loss of covered damage to the structure subject to terms, conditions and limits of the policy, with United American Contractors in the amount of $470,714.65. . . . Previous payments totaling $280,649.61 have been issued and a payment of $156,575.68 is forthcoming under separate cover. . . . Once again, note that all options under the policy of insurance remain at your disposal, and acceptance of this check will not waive any of your rights under the policy of insurance.

(Docket No. 75-30 at 17.)

Plaintiff cashed Scottsdale's checks, totaling $437,225.29, but never made repairs to the building.  In October 2014, Plaintiff's counsel sent Scottsdale a repair estimate prepared by John Tricozzi, who determined that the cost to repair the damage caused by the wind to be $917,110.62.  Because Scottsdale refused to pay for the balance owed on the Tricozzi estimate, Plaintiff filed the instant suit against Scottsdale for breach of contract and breach of the implied covenant of good faith and fair dealing.

Scottsdale has filed two motions for summary judgment. Scottsdale argues that it is entitled to judgment in its favor on Plaintiff's claims because Plaintiff and Scottsdale entered into a binding settlement agreement as a result of the email exchanges between Lester of United and Rothman of Scottsdale. Scottsdale also argues that Plaintiff cannot use Kemper as its expert witness on causation because Plaintiff belatedly identified her as its expert, and she is otherwise unqualified to serve as an expert witness because she only served as a fact witness during the discovery process. Scottsdale argues that without an expert to opine on how the wind during Sandy caused damage to Plaintiff's building, Plaintiff's claims fail as a matter of law.

Plaintiff has opposed both motions. First, Plaintiff argues that United did not have the authority to bind it to any settlement. Moreover, even if United did have such authority, no settlement was ever agreed to, which Plaintiff argues is evidenced by United employees' testimony, and also the language in Rothman's April 9, 2013 letter.

Second, Plaintiff argues that it does not require an expert to prove its breach of contract claim against Scottsdale. Plaintiff explains that it is not disputing the necessary repairs to the building, which are delineated in the March 24, 2013 estimate prepared by Scottsdale, but only the cost to make the repairs. Plaintiff contends that Scottsdale's refusal to pay the

5

cost as found by Tricozzi constitutes a breach of the insurance contract, as well as bad faith. Plaintiff finally argues that if it were required to provide expert testimony with regard to the causal link between the wind and property damage, it should be permitted to use Kemper as its expert.

## DISCUSSION

### A. Subject matter jurisdiction

Defendants removed this action from New Jersey state court to this Court pursuant to 28 U.S.C. § 1441. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. The citizenship of the parties is as follows: Coleman Enterprises Co. a/k/a Coleman Management Co. is a partnership comprised of Peter McKeown, now deceased, formally a citizen of New Jersey, and Rita McKeown, a citizen of New Jersey. Scottsdale Insurance Company is a corporation organized under the laws of the state of Ohio, with its principal place of business in Arizona.

### B. Summary judgment standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere

7

allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

   **C.   Analysis**

       **1.   *Whether the parties entered into a valid and enforceable settlement agreement***

The law governing the enforcement of a settlement agreement holds that a settlement agreement between parties to a lawsuit is a contract like any other contract. Peskin v. Peskin, 638 A.2d 849, 857 (N.J. Super. Ct. App. Div. 1994) (citing Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990)). A contract is formed where there is offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. U.S. v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997) (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992)). That contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms. Id. Where the parties do not agree on one or more essential terms, however, courts generally hold that the agreement is unenforceable. Id. The party seeking to enforce the alleged settlement agreement has the burden of proving the existence of the agreement under contract law. Id. (citations omitted). Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement. Washington v. Klem,

8

388 F. App'x 84, 85 (3d Cir. 2010) (citing Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991)).

The Court finds that disputed issues of material fact preclude the summary resolution of the parties' differing views on the purported settlement agreement. Disputed issues include:

1. Whether United had authority to bind Plaintiff to any settlement. Plaintiff disputes that it granted United authority to agree to a final figure out of the insurance policy, and the contract between Plaintiff and United only allows United to communicate with insurance companies about information generated during the scope of work, and does not provide that United could bind Plaintiff on payment of insurance policy proceeds. Plaintiff also argues that Scottsdale was aware from its communications with United that United's sole responsibility was to prepare and review damages estimates, and that United discussed the estimates with McKeown in order to secure funds as a starting point for the agreed-upon damages, but not as to all of the damages.

2. Whether Lester and Rothman's email exchange constituted the requisite intent that the total payment to Plaintiff out of the insurance policy would be limited to $470,714.65. Plaintiff argues that Rothman's March 24, 2013 email with the estimate for "discussion purposes," and Lester's March 25, 2013 reply "we will work off your estimate," does not

evidence the offer, acceptance, and consideration required of a valid settlement.  Plaintiff argues that the exchange simply shows that they would continue to discuss the estimate as the repairs unfolded, but that the estimate and payment could get the ball rolling.  Plaintiff further argues that the language of Rothman's April 9, 2013 letter – that Plaintiff still retained all of its rights under the policy and the acceptance of the check did not waive those rights – directly contradicts Scottsdale's position that they had settled the entire claim.

3. <u>Whether the parties agreed to the scope of the damages and the cost to repair those damages</u>.  Plaintiff argues that to the extent that the parties agreed to the estimate, it did not represent the final undisputed amount, as United explains that agreeing to an "undisputed amount" with an insurance company can happen repeatedly as they negotiate and the work progresses.

4. <u>The import of Scottsdale continuing to adjust the claim with Plaintiff after the purported settlement</u>.  Plaintiff points out that in July 2013, Scottsdale wrote to Plaintiff that it was aware that Plaintiff was no longer using the services of United, and that it was prepared to re-inspect the premises.  Scottsdale again suggested that it re-inspect the premises on November 22, 2013 and December 30, 2013.  Plaintiff argues

      that this does not demonstrate that Scottsdale considered the matter settled as of March 2013.

5. <u>Why Scottsdale did not request Plaintiff to sign a release</u>. Plaintiff argues that Scottsdale's failure to obtain a release from Plaintiff is further evidence that no valid settlement was agreed to.

Scottsdale presents a different view of the parties' email exchange and their actions, including Rothman's and Lester's view that there was a settlement, and disputes that United did not have the authority to settle Plaintiff's claim with Scottsdale, as demonstrated by the parties' course of dealing. Scottsdale also argues that post-settlement conduct is irrelevant to the issue of whether a settlement was agreed to in March 2013.

Plaintiff, however, has met its burden to defeat summary judgment by providing sufficient material facts that dispute Scottsdale's. It must be for a jury to decide whether the parties entered into an enforceable settlement agreement that precludes Plaintiff from pursuing its present suit against Scottsdale.[2]

---

[2] Because the Court will also deny Scottsdale's other motion for summary judgment, it may be prudent for the parties to discuss whether the trial should be conducted in two parts - presenting to the jury first the issue of whether an enforceable settlement bars Plaintiff's claims, and only proceeding to the substance of Plaintiff's claims if the jury decides the first question in the negative.

### 2. *Whether Plaintiff requires a causation expert to prove its case, and if so, whether Plaintiff can use Kemper as its expert witness*

Scottsdale argues that Plaintiff must present expert testimony to establish the connection between the wind and the damage to Plaintiff's building.  Scottsdale further argues that Plaintiff cannot prove causation because it does not have an expert on that issue.  Scottsdale points out that Plaintiff failed to produce an expert on this issue by the May 13, 2016 expert disclosure deadline, and it was not until July 21, 2016, after the depositions of the parties' other experts, that Plaintiff informed Scottsdale that it intended to use Kemper to show how the wind caused the damage.  Scottsdale further points out that it was not until the September 6, 2016 pre-trial disclosures that Kemper was formally named as an expert for Plaintiff, and that Kemper's deposition was conducted solely as a fact witness, and none of the criteria for qualifying her an expert witness has been performed by Plaintiff.  As a result, Scottsdale argues that Plaintiff's case should be dismissed based on the Poulis factors.[3]

---

[3] When a party moves for the dismissal of an action because of another party's failure to abide by the federal rules or court orders, a court must consider the factors set forth in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 869 (3d Cir. 1984) (the six factors are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or

In response to Scottsdale's argument, Plaintiff first argues that it does not need an expert to establish that the wind from Sandy caused damage to the building because the damage caused by the wind is undisputed. Plaintiff argues that it is asserting a breach of contract claim and breach of the implied covenant of good faith and fair dealing claim with regard to Scottsdale's failure to pay the appropriate cost for the damage, and not a claim on the issue of whether the wind caused the damage. Scottsdale provided a revised estimate outlining the damage that needed repair, and Plaintiff argues that it simply disputes the cost of the repair. To prove that Plaintiff's repair estimate, and not Scottsdale's, is the appropriate measure of the repair costs, and that Scottsdale's refusal to pay Plaintiff's estimate is a breach of the insurance policy and constitutes bad faith, Plaintiff has provided the appropriate experts. Plaintiff therefore argues that an expert on wind damage causation is not necessary as Scottsdale contends. Plaintiff further argues that if a causation expert is needed, Kemper should be permitted to serve as its expert.

Assuming for the purposes of resolving Scottsdale's motion that Plaintiff cannot use Kemper as an expert witness at trial, that fact alone is not fatal to Plaintiff's breach of contract and bad faith claims. It is Plaintiff's position that the damages set

---

defense).

forth in Rothman's revised estimate constitute the damages to its building as a result of the wind. Plaintiff only disputes the repair methodology and pricing for those articulated damages. Plaintiff has provided an expert witness to prove that its repair methodology and pricing is correct, and to prove that Scottsdale's refusal to pay for those repairs constitutes a breach of contract and bad faith. To establish the basis for the damages contained in the Rothman estimate, Plaintiff only needs to provide fact witnesses to provide the foundation for that estimate. At trial, Kemper will merely serve as a fact witness to explain her observation of the damage and her resulting report, on which the Rothman estimate was substantially based.[4] Such testimony meets the requirements of Federal Evidence Rules 602 and 701.[5]

---

[4] If it were Plaintiff's position that Scottsdale's determination of the scope of the damage caused by wind is incorrect, Plaintiff may need to provide expert testimony to prove how its calculation is the proper assessment of the wind damage. See Rocco v. New Jersey Transit Rail Operations, Inc., 749 A.2d 868, 879 (N.J. Super. Ct. App. Div. 2000) (quoting Butler v. Acme Markets, Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982)) (quotations and other citations omitted)("Expert testimony is required when the subject matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable."); Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . .").

[5] See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.");

Plaintiff has the burden of proving the elements of its breach of contract and breach of the implied covenant of good faith and fair dealing claims.  See Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013) (citation omitted) ("To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages."); Wood v. New Jersey Mfrs. Ins. Co., 21 A.3d 1131, 1140 (N.J. 2011) (quoting Courvoisier v. Harley Davidson, 742 A.2d 542 (N.J. 1999) ("'In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other party to receive the benefits of the agreement.'")); Wade v. Kessler Institute, 798 A.2d 1251, 1262 (N.J. 2002) (citations omitted) (explaining that an express or implied contract must be found before the jury could find that the implied covenant of good faith and fair dealing had been breached).  The sufficiency of

---

Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

15

Plaintiff's evidence to prove its claims may be challenged by Scottsdale at trial, including its argument that Plaintiff cannot support its repair costs because Plaintiff provides no basis that the wind damaged everything above six feet from the bottom floor.[6] Plaintiff's claims are not dismissible at the summary judgment stage, however, solely on the basis that it has not produced a qualified expert to opine on the extent of the wind damage.[7]

## CONCLUSION

It is for a jury to determine whether the parties entered into a settlement agreement that precludes Plaintiff's suit

---

[6] After the close of Plaintiff's case at trial, or at any time before the matter is given to the jury, Scottsdale retains the option of moving for a directed verdict in its favor. See Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment."). The Court may also enter judgment as a matter of law if it determines that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiff on its claims. See Fed. R. Civ. P. 50(a)(1) ("If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.").

[7] If Plaintiff endeavors to proffer Kemper as an expert at trial, Scottsdale may file a motion in limine to preclude Kemper's testimony as an expert witness. The Court does not take a position on that issue at this time, other than to note that Fed. R. Civ. P. 26(a)(2)(D) provides that a party must make expert witness disclosures at the times and in the sequence that the court orders, and that an expert witness must meet the elements of Fed. R. Evid. 702 and 703.

against Scottsdale.  If a jury finds that no enforceable settlement agreement exits, the jury must then determine whether Scottsdale breached the parties' insurance contract and did not act in good faith.  Plaintiff's claims will not be dismissed for lack of an expert on the issue of wind damage at this current stage in the case.  Accordingly, both of Scottsdale's motions for summary judgment must be denied.

    An appropriate Order will be entered.


Date:   March 31, 2017          s/NLH
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.